FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
9/1/2023 1:00 PM
JAMIE SMITH
DISTRICT CLERK
23DCCV1185

CAUSE NO. _____

| | | |
|---|---|---|
| LYNDA WILLIE, KENNETH MARTIN, JENNYFER AGUILAR, JORGE ALFARO, JR, ASHLYN BOYCE, JULIAN BRIDGES, KENNEDY RANDLE, JATORRY CAULEY, JAMYA CLARK, JAMICHAEL CLARK, JACOBIE COTTON, MYA DARTEZ, ROMYNIE DUDLEY, DANIELLA GARCIA, CHRISTIAN HERRING, CHERISH HERRING, MYKEL JANISE, BILLY JOSEPH, COLBYE KUCHERA, JAYD LIVINGS, KENNETH MARTIN, JUSTICE MAYES, DON MOFF, III, TIMOTHY O'BRIEN, CIERA PATTIE, RODIE RASA, SPEED RASA, PARIS ROBERTS, RAJ ROBISON, AARON SHELDON, TYANNA SIMPSON, MAKENNA VINCENT, ISAIAH WHEATON, and AYANNA WILTZ, | § § § § § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs*, | § § | JEFFERSON COUNTY, TEXAS |
| v. | § | |
| CONTINENTAL CASUALTY COMPANY, STUART SHANNON NESTER, and JAMES P. WHITE | § § § § | |
| *Defendants*. | § § | ____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Plaintiffs, **LYNDA WILLIE, KENNETH MARTIN, JENNYFER AGUILAR, JORGE ALFARO, JR, ASHLYN BOYCE, JULIAN BRIDGES, KENNEDY RANDLE, JATORRY CAULEY, JAMYA CLARK,**

1

JAMICHAEL CLARK, JACOBIE COTTON, MYA DARTEZ, ROMYNIE DUDLEY, DANIELLA GARCIA, CHRISTIAN HERRING, CHERISH HERRING, MYKEL JANISE, BILLY JOSEPH, COLBYE KUCHERA, JAYD LIVINGS, JUSTICE MAYES,  DON MOFF, III, TIMOTHY O'BRIEN, CIERA PATTIE,  ROADIE RASA, SPEED RASA, PARIS ROBERTS, RAJ ROBISON, AARON SHELDON, TYANNA SIMPSON, MAKENNA VINCENT, ISAIAH WHEATON, and AYANNA WILTZ,  complaining of the actions of the Defendants CONTINENTAL CASUALTY COMPANY, JAMES P. WHITE and STUART SHANNON NESTER and in support thereof would respectfully show unto this Court the following:

## I.    PARTIES

Plaintiff **LYNDA WILLIE**, Individually, is a resident of Orange, Orange County, Texas.

Plaintiff **KENNETH MARTIN**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **JENNYFER AGUILAR**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **JORGE ALFARO, JR.**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **ASHLYN BOYCE**, Individually, is a resident of Beaumont, Jefferson County, Texas.

2

Plaintiff **JULIAN BRIDGES**, Individually, is a resident of Aurora, Arapahoe County, Colorado.

Plaintiff **KENNEDY RANDLE**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **JATORRY CAULEY**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **JAMYA CLARK**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **JAMICHAEL CLARK**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **JACOBIE COTTON**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **MYA DARTEZ**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **ROMYNIE DUDLEY**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **DANIELLA GARCIA**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **CHRISTIAN HERRING**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **CHERISH HERRING**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **MYKEL JANISE**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **BILLY JOSEPH**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **COLBYE KUCHERA,** Individually, is a resident of Tyler, Smith County, Texas.

Plaintiff **JAYD LIVINGS**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **JUSTICE MAYES**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **DON MOFF, III**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **TIMOTHY O'BRIEN**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **CIERA PATTIE**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **RODIE RASA**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **SPEED RASA**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **PARIS ROBERTS**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **RAJ ROBISON**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **AARON SHELDON**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **TYANNA SIMPSON**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Plaintiff **MAKENNA VINCENT**, Individually, is a resident of Huntsville, Walker, County, Texas.

Plaintiff **ISAIAH WHEATON**, Individually, is a resident of Woodville, Tyler County, Texas.

Plaintiff **AYANNA WILTZ**, Individually, is a resident of Beaumont, Jefferson County, Texas.

Defendant **CONTINENTAL CASUALTY COMPANY** ("**CONTINENTAL**") is a corporation organized and existing under the laws of Delaware with a principal place of business in Chicago, Illinois with its headquarters located at 333 South Wabash Avenue, Chicago, IL 60685. At all relevant times, **CONTINENTAL**

**CASUALTY COMPANY** was (and continues to be) an insurance company that provides boiler and machinery insurance, boiler inspections and maintenance evaluations throughout the United States and has approximately three (3) locations in Texas. Continental may be served by serving its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Defendant **JAMES P. WHITE**  ("**WHITE**") is an individual who resides in Delaware County, Pennsylvania and at times relevant hereto acted as **CONTINENTAL'**s Large Loss Adjuster. He may be served with process at his residence: 209 Oakwynne, Broomall, Pennsylvania, 19008.

Defendant **STUART SHANNON NESTER** ("**NESTER**") is an individual who resides in Bexar County, Texas and at times relevant hereto acted as **CONTINENTAL'**s Jurisdictional Inspector. He may be served with process at his residence: 526 College Blvd., San Antonio, Texas 78209-3622.

## II.    JURISDICTION AND VENUE

Both jurisdiction and venue are proper in the cause of action pursuant to the TEXAS CIVIL PRACTICE AND REMEDIES CODE because the conduct at issue and made the subject of this lawsuit occurred, for the most part, in Jefferson County, Texas. The Defendants conducted a fraudulent and misleading investigation to coverup true facts and protect Defendants **CONTINENTAL** and **NESTER** from liability related to an incident that occurred at Marshall Middle School and began with all Defendants attending various inspections at Marshall Middle School located in Beaumont, Texas. **CONTINENTAL** regularly conducts business in the State of Texas by entering into

contracts with Texas entities and conducting state mandated safety inspections of boilers in Texas. Defendant **WHITE** traveled to Jefferson County, Texas to participate in the investigation and inspection(s) and directed correspondence to Texas when he corresponded with ROBBY DEAN TROUTT ("Troutt") regarding the investigation of the carbon monoxide release.

Any attempt to remove this action under, *inter alia*, 28 U.S. Code § 1441, would be brought in bad faith as there is not complete diversity between the Parties (Plaintiffs and Defendants). Further, there is a lack of diversity among the parties since Plaintiffs, **LYNDA WILLIE, KENNETH MARTIN, JENNYFER AGUILAR, JORGE ALFARO, JR, ASHLYN BOYCE, KENNEDY RANDLE, JATORRY CAULEY, JAMYA CLARK, JAMICHAEL CLARK, JACOBIE COTTON, MYA DARTEZ, ROMYNIE DUDLEY, DANIELLA GARCIA, CHRISTIAN HERRING, CHERISH HERRING, MYKEL JANISE, BILLY JOSEPH, COLBYE KUCHERA, JAYD LIVINGS, JUSTICE MAYES,  DON MOFF, III, TIMOTHY O'BRIEN, CIERA PATTIE,  RODIE RASA, SPEED RASA, PARIS ROBERTS, RAJ ROBISON, AARON SHELDON, TYANNA SIMPSON, MAKENNA VINCENT, ISAIAH WHEATON,** and **AYANNA WILTZ,**  as well as Defendant **NESTER** are deemed citizens of the State of Texas. Additionally, Plaintiffs are not making any claims for relief under federal law. As such, removal of this action to federal court is *per se* improper and will be met with an immediate motion for remand including a request that sanctions be imposed against any defendant for its improper removal of this action.

### III.    DISOCVERY CONTROL PLAN

Plaintiffs intend to conduct discovery under Level 3 as set forth in TEXAS RULES OF CIVIL PROCEDURE Rule 190.4.

### IV.    FACTUAL BACKGROUND

**A. The Conspirators**

**CONTINENTAL** is an insurance and inspection company authorized to perform state-required safety inspections on boilers subject to Texas' boiler safety requirements if **CONTINENTAL** also insurers the boiler. Defendant, **NESTER,** is an authorized inspector licensed by the National Board of Boiler and Pressure Vessel Inspectors and the State of Texas to conduct state-required safety inspections of boilers. **NESTER** was employed by Defendant **CONTINENTAL** and performed boiler inspections at not only Marshall Middle School but other schools within Beaumont Independent School District ("BISD"). BISD did not have boiler inspection experts and relied on **CONTINENTAL** and **NESTER** to ensure its boilers were safe to operate.

Troutt is employed by the State of Texas as the Chief Boiler Inspector and program manager over Texas boiler safety which is administered by the Texas Department of Licensing and Regulation. Troutt has held that position since approximately 2013. In that role, he is responsible for enforcing Texas boiler safety laws and investigating serious boiler incidents to determine the cause of the boiler incident. Troutt is required to file a finl report with the Executive Director of Texas' Department of Licensing and Regulation.

In performing his duties as Texas' Chief Boiler Inspector, Troutt works with a Board of Boiler Rules whose purpose is to advise him in the adoption of definitions and rules relating to the safe construction, installation, inspection, operating limits, alteration, and repair of boilers and their appurtenances. Troutt appointed **NESTER** to serve on Troutt's eleven (11) person "Boiler Board" which assists him in administering Texas' boiler safety laws.

Defendant **WHITE** is an adjuster for **CONTINENTAL**'s Large Loss Division. **WHITE** was assigned by **CONTINENTAL** to respond to a media report regarding the carbon monoxide event that occurred at Marshall Middle School on January 28, 2016 and poisoned Plaintiffs and many other minor children.

### B. Continental's Contract vs. Continental's Conduct

**CONTINENTAL** which operates under the trade name CNA, assumed responsibilities as boiler safety experts and inspectors pursuant to the Texas Boiler Act ("the Act"), its contract with Beaumont Independent School District ("BISD"), Texas common law, and its undertaking to adhere to applicable standards of care. **CONTINENTAL** and its inspector, **NESTER**, thereby assumed responsibility for the health and safety of the students, staff, and public visitors of Marshall Middle School ("Marshall") related to the operating condition of the boilers there, including a heating boiler identified as TX160840 ("the Heating Boiler"). In assuming this responsibility, **CONTINENTAL**, through its inspector **NESTER**, was obligated to report to the state's Chief Boiler Inspector, Troutt after placing the boiler in operation when feasible:

(i)      Any unsafe condition of boilers at Marshall;

(ii)     Any hazardous conditions affecting the safety of boilers at Marshall Middle School.

The Act, **CONTINENTAL**'s contract with BISD, Texas common law, and its undertaking to adhere to applicable standards of care imposed on **CONTINENTAL** and **NESTER**, Continental's inspector regulated by the Act, a duty of reasonable care for the safety of all others in proximity of the boilers at Marshall Middle School, including the Heating Boiler, identified as TX160840.

In addition to performing the state-required safety boiler inspections at Marshall Middle School, **CONTINENTAL** contracted with BISD to make safety inspections, perform the duty of any person or organization to provide for the health or safety of workers or the public, and warrant that boiler conditions are safe, healthful, and comply with law, regulations, codes and standards. **CONTINENTAL** represented that as an integral, inseparable aspect of its state-required safety inspections, **CONTINENTAL** evaluates the maintenance and testing programs specific to the boilers it inspects. But **CONTINENTAL** did not. **NESTER** admitted he did not perform safety inspections of the boilers at Marshall.

Yet **CONTINENTAL** held itself out to BISD and Marshall Middle School as possessing boiler safety expertise with respect to boilers, their safety equipment and maintenance and testing programs. **CONTINENTAL** knew or should have known that BISD and Marshall Middle School were relying on its boiler expertise.

In addition to the Act and **CONTINENTAL**'s contractual duties, Texas common law holds that **CONTINENTAL** had a duty to use reasonable care in

performing its boiler certification and safety inspections and evaluations of maintenance and testing programs for the boilers it inspected, and to act for the protection of the students, staff, and community at Marshall Middle School.

**CONTINENTAL**'s undertakings to perform these services and others (such as, *inter alia*, a maintenance review of the physical school plant at Marshall Middle School) were to protect Plaintiffs from harm. But **CONTINENTAL** did not do any of those things either. The reason for **CONTINENTAL**'s failures is now clear; **CONTINENTAL** was losing money on its contract with BISD due to the number of inspection hours required on BISD's boilers. Once **CONTINENTAL** discovered it was losing money due to the BISD inspections, the hours **CONTINENTAL**  and its inspectors spent inspecting boilers at BISD declined. So too did the likelihood that Marshall Middle School would be a safe place for its students, staff and the public.

### C. Carbon Monoxide Incident

On November 5,2015, **CONTINENTAL** conducted what was supposed to be a safety inspection on the Heating Boiler at Marshall.  Without even placing the boiler into operation as was feasible, without conducting an adequate inspection and without ensuring compliance with the ACT, **CONTINENTAL**,  through its inspector **NESTER**, erroneously and recklessly reported to the State of Texas, the Heating Boiler was safe to operate.  It was not.

On January 28, 2016 just eighty-two (82) days after the inspection, the Heating Boiler released dangerous levels of carbon monoxide into Marshall Middle School. The toxic fumes overcame many students and staff causing immediate symptoms

such as headaches, lethargy, vomiting and unconsciousness. The school principal sought emergency services. First responders reported to the school, measured (in real time) exceedingly high levels of carbon monoxide and immediately evacuated the school. Those sickened by the fumes were transported to local hospitals and emergency treatment facilities. Upon further evaluation and objective testing, some of those exposed to these dangerous levels of carbon monoxide were determined to have sustained permanent brain damage because of this exposure.

### D. The Coverup

As required by the ACT, Troutt initiated an investigation into the carbon monoxide release at Marshall. Troutt conducted his investigation at Marshall on January 28 and 29 and March 2 and 29 of 2016. **CONTINENTAL**'s large loss adjuster Defendant **WHITE** and a boiler safety expert retained by **CONTINENTAL**, Mr. John Puskar, also attended and participated in post-incident inspections at Marshall on March 2, 2016. During this inspection, an attempt was made to remove the Heating Boiler's burners and signs of excessive deterioration were noted in the boiler's firebox. Mr. Puskar returned to Marshall on March 29, 2016 on **CONTINENTAL**'s behalf. The burners of the Heating Boiler were removed from the Heating Boiler on March 29, 2016 and photographed by Mr.  Puskar.

The condition of the burners, as well as evidence of flame roll-out, indicated the Heating Boiler was in a severely compromised condition that would cause it to produce excessive amounts of carbon monoxide.  Puskar has opined, "obvious evidence" demonstrated the Heating Boiler was entering a dangerous "death-spiral"

and its ability to operate safely could not be confirmed. This condition of the Heating Boiler's burners and evidence of flame rollout would have been visible at **NESTER**'s inspection of the Heating Boiler on November 5, 2015 had **NESTER** performed an adequate inspection. The Heating Boiler should have been immediately red-tagged and taken out of service until these dangerous conditions were corrected. The likelihood the Heating Boiler would produce excessive and potentially dangerous amounts of carbon monoxide would also be known to a competent inspector performing a legitimate and adequate safety inspection.

This finding related to the Heating Boiler's burners and evidence of flame rollout was detrimental for **CONTINENTAL** and its inspector **NESTER**. Upon information and belief, this information was communicated to **WHITE** by **CONTINENTAL**'s retained boiler safety expert Puskar, who was a percipient witness to the condition of the burners. There is documentary evidence that proves that **CONTINENTAL** and Troutt acted in concert during the investigation of the carbon monoxide release.

The investigative report eventually issued by Troutt did not mention the severely deteriorated condition of the Heating Boiler's burners, the evidence of flame rollout on the Heating Boiler or that this "death-spiral" condition resulted in the carbon monoxide release. Instead, the report stated the carbon monoxide was produced by a flame exiting a hole in the side of the boiler and that such would not have been visible to **NESTER** during his inspection.

13

Despite the fact Troutt was present when the burners were removed and photographed, there was not a single photograph of the burners nor a mention of their condition in the report he filed. Similarly, **CONTINENTAL**'s claim file contains not one photograph of the burners nor any mention of their dangerous condition. Plaintiffs only discovered the existence of the photographs of the Heating Boiler's burners on September 2, 2021 when the photographs were produced in response to a subpoena served on Puskar. It was only then that Plaintiffs learned of the never-before-mentioned dangerous condition of the burners despite these photographs being in the possession of **CONTINENTAL** for many years. Never before mentioned in Troutt's report and never before mentioned in **CONTINENTAL**'s claim file or report of its findings to BISD. This significant finding known to cause dangerous carbon monoxide production and put a boiler into a "death spiral" was withheld and concealed from BISD, its students, staff and other Texas citizens by those obligated to fairly and accurately investigate and report the boiler's condition.

Plaintiffs **WILLIE** and **MARTIN** and parents of the remaining Plaintiffs, who were minors at the time, brought a lawsuit against **CONTINENTAL** complaining that **NESTER** had negligently performed the inspection on November 5, 2015. Troutt was called as a witness by **CONTINENTAL**. During his deposition testimony on August 7, 2018, Troutt acting without authority to do so and thereby committing an *ultra vires* act, testified that **NESTER** was not required to inspect the Heating Boiler while it was in operation. This is contrary to THE BOILER SAFETY ACT. The Act clearly requires that external inspections, like the one **NESTER** conducted on November 5,

14

2015, be conducted while the boiler is in operation, if feasible. This just makes sense. BISD testified it was not only feasible but also quite simple to place the Heating Boiler in operation for inspection. BISD confirmed that **NESTER** never requested the Heating Boiler be placed in operation during his inspections.  **NESTER** admitted under oath he certified the Heating Boiler's continued safety by inspecting it while it was not in operation on November 5, 2015. Not only did Troutt testify contrary to the ACT, but he also clearly covered for **NESTER** by testifying he had no criticisms of **NESTER's** inspection. Again, this testimony was, in addition to being just plain wrong, was an *ultra vires* act that Troutt had no authority to provide.

### E.  The Harm

Plaintiffs did not discover Mr. Puskar's photographs of the Heating Boiler's burners until September 2, 2021, approximately five and a half years after they were taken. By that time, the prosecution of the negligent inspection case was tainted by the fraudulent post-incident investigation and Troutt's *ultra vires* testimony. That case did not survive a summary judgement that was ultimately appealed and affirmed based on the fraudulent information provided by Troutt and Defendants. The outcomes, both based partly on Troutt's *ultra vires* testimony which contradicted the ACT, would have been much different had the true facts regarding the condition of the Heating Boiler and its burners at the time of the carbon monoxide incident been known, and had Troutt not provided *ultra vires* testimony skewed toward exonerating **NESTER.**

# V. CAUSES OF ACTION

## A. Fraud

Plaintiffs incorporate all preceding factual allegations above here. Troutt made representations to Plaintiffs, and the public generally, when he submitted his investigation report and testified in the negligent inspection lawsuit. Defendants **CONTINENTAL** and **WHITE** made representations to BISD when it corresponded with BISD regarding its investigation and findings related to the boiler. Those representations include, *inter alia*, the ones identified herein as well as others to be shown after an adequate time for discovery and/or at trial.

The representations regarding the investigation, condition of the Heating Boiler, the reasons for the carbon monoxide release at Marshall Middle School on January 28, 2016 and **NESTER**'s culpability for failing to inspect the Heating Boiler while in operation since this was feasible were material.

The representations regarding the investigation, condition of the Heating Boiler, the reasons for the carbon monoxide release at Marshall Middle School on January 28, 2016 and **NESTER**'s culpability for failing to inspect the Heating Boiler while in operation since this was feasible were false.

When Troutt and/or **CONTINENTAL** and **WHITE** made the representations specified herein, Troutt and/or **CONTINENTAL** and **WHITE** either knew they were false or made them recklessly as a positive assertion without knowledge of their truth.

Troutt and/or **CONTINENTAL** and **WHITE** made the representations specified herein with reason to expect that the Plaintiffs, BISD and the public would rely on them. The Plaintiffs were members of a class of people who relied on the representations and Plaintiffs' reliance was reasonable.

The representations specified herein regarding the investigation, condition of the Heating Boiler, the reasons for the carbon monoxide release at Marshall Middle School on January 28, 2016 and **NESTER**'s culpability for failing to inspect the Heating Boiler while in operation since this was feasible caused the Plaintiffs' injuries and damages including consequential damages.

### B. Conspiracy to Commit Fraud

Plaintiffs incorporate all preceding factual allegations above here. Defendants **CONTINENTAL**, **WHITE** acting in concert with Troutt were a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by an unlawful means. Defendants **CONTINENTAL**, **WHITE** and Troutt had a meeting of the minds on the object and/or course of action. Troutt committed an overt act to further the object or course of action when he made misrepresentations regarding the investigation, condition of the Heating Boiler, the reasons for the carbon monoxide release at Marshall Middle School on January 28, 216 and **NESTER**'s culpability for failing to inspect the Heating Boiler while in operation since this was feasible. Plaintiffs suffered injuries and damages as a proximate result of the wrongful act.

Defendants **CONTINENTAL**, **WHITE** acting in concert with Troutt were a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by an unlawful means. Defendants **CONTINENTAL**, **WHITE** and Troutt had a meeting of the minds on the object and/or course of action. Defendants **CONTINENTAL** and **WHITE** committed an overt act to further the object or course of action when they made misrepresentations regarding the claim investigation, condition of the Heating Boiler, the reasons for the carbon monoxide release at Marshall Middle School on January 28, 216. Plaintiffs suffered injuries and damages as a proximate result of the wrongful act.

### C. Breach of Fiduciary Duty

Plaintiffs incorporate all preceding factual allegations above here. Plaintiffs had a fiduciary relationship with the Defendants **NESTER** and Troutt.  Defendants **NESTER** and Troutt owed Plaintiffs an informal fiduciary duty that arises from a moral relationship of trust and confidence due to their position as boiler safety inspectors licensed by the National Board of Boiler and Pressure Vessel Inspectors and the State of Texas. BISD and Plaintiffs relied on them to inspect and investigate the condition of the Heating Boiler and cause of the carbon monoxide release on January 28, 2016, honestly and completely.  The existence of this fiduciary duty is a question of fact.

**CONTINENTAL** also owed an informal fiduciary duty that arises from a moral relationship of trust and confidence due to its position as an authorized inspection agency by the National Board of Boiler and Pressure Vessel Inspectors and

the State of Texas. BISD and Plaintiffs relied on them to inspect and investigate the condition of the Heating Boiler and cause of the carbon monoxide release on January 28, 2016 honestly and completely. The existence of this fiduciary duty is a question of fact.

Defendants breached their fiduciary duties to Plaintiffs by concealing the condition the Heating Boiler, the cause of the carbon monoxide release as determined during the investigation of the carbon monoxide incident and material evidence related to that condition, specifically, the photographs taken by Puskar. Troutt also breached his fiduciary duty by testifying he had no criticisms of **NESTER**'s inspection of the Heating Boiler on November 5, 2015 before the carbon monoxide release when **NESTER** and **CONTINENTAL** both violated the ACT by inspecting the Heating Boiler while it was not in operation. Troutt further breached his fiduciary duty by testifying **NESTER**'s inspection of the Heating Boiler on November 5, 2015 before the carbon monoxide release did not have to be conducted while the boiler was in operation because this is contrary to requirements of the ACT and false and misleading.

Defendants **CONTINENTAL**'s and **WHITE**'s breach of their fiduciary duties injured Plaintiffs by interfering with their ability to pursue claims against **CONTINENTAL** based on the facts regarding the true condition of the Heating Boiler, the reason it was producing excessive carbon monoxide on the date they were poisoned and **NESTER**'s culpability for failing to inspect the Heating Boiler while in operation since this was feasible. This breach resulted in Plaintiffs' harm and

damages and benefitted Defendant **CONTINENTAL** by allowing **CONTINENTAL** escape liability for causing personal injuries to Plaintiffs that resulted from **NESTER**'s negligent inspection on November 5, 2015.

### D. Conspiracy to Breach Fiduciary Duty

Plaintiffs incorporate all preceding factual allegations above here. Defendants **CONTINENTAL**, **NESTER, WHITE** and Troutt were a combination of two or more persons whose object was to accomplish a lawful purpose (*i.e.* aiding and abetting **CONTINENTAL** as it sought to escape liability in the negligence inspection case based on **NESTER**'s negligent inspection on November 5, 2015) by the unlawful means of fraud, conspiracy to commit fraud, breach of fiduciary duties and conspiracy to breach fiduciary duties. The Defendants had a meeting of the minds on the object and/or course of action. At least one of the members committed an unlawful overt act to further the object or course of action. Plaintiffs suffered injuries and damages as a proximate result of the wrongful act.

## VI.    DAMAGES

As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiffs have suffered the following damages:

Mental anguish;

Consequential damages for the loss of the opportunity to recover in tort for personal injuries and damages due the carbon monoxide poisoning and for some, the resulting permanent brain damage caused by this toxic release;

Exemplary damages;

Attorney's fees;

Court costs;

Pre and post judgment interest.

## VII.   EQUITABLE RELIEF

As a result of Defendant **CONTINENTAL** 's disloyalty to its fiduciary duty as an authorized inspection agency, this Court should order it to disgorge all proceeds it has received in the form of premium payments for all contracts under which it performs jurisdictional inspections. This Court should order that disgorgement and place those funds in a constructive trust to be administered for the benefit of Plaintiffs herein so they may be monitored and treated for the brain damage inflected upon them by **CONTINENTAL** and **NESTER**'s refusal to perform a safety inspection on the Heating Boiler as required by the ACT. Additionally, this Court should order the recission of every contract under which **CONTINENTAL** performs jurisdictional inspections.

## VIII.  EXEMPLARY DAMAGES

Plaintiffs incorporate all preceding factual allegations above here. Plaintiffs damages resulted from Defendants' malice and/or actual fraud, which entitles Plaintiffs to exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES code, section 41.003(a).

## IX.   JURY DEMAND

Plaintiffs demand that this case be tried by jury, and that upon final hearing of such evidence, that the jury return a verdict in conformity with the evidence in

such an amount as within this Court's discretion that is just and reasonable and tender the appropriate fee with this *Petition.*

Respectfully Submitted,

**FERGUSON LAW FIRM, LLP**
3155 Executive Blvd.
Beaumont, Texas 77705
(409) 832-9700
(409) 832-9708 – fax

By: /s/ Jane S. Leger
Jane S. Leger
State Bar No. 00788814
jleger@thefergusonlawfirm.com
vdelarosa@thefergusonlawfirm.com
Mark C. Sparks
State Bar No. 24000273
mark@thefergusonlawfirm.com
Tripp Jones
State Bar No. 24097058
tjones@thefergusonlawfirm.com
Yizhen "Amiah" Ding
State Bar No. 24122781
ading@thefergusonlawfirm.com
**ATTORNEYS FOR PLAINTIFFS**