**UNITED STATES DISTRICT COURT**            **EASTERN DISTRICT OF TEXAS**

LYNDA WILLIE, KENNETH MARTIN,       §
JENNYFER AGUILAR, JORGE ALFARO,     §
JR., ASHLYN BOYCE, JULIAN BRIDGES,  §
KENNEDY RANDLE, JATORRY CAULEY,     §
JAMYA CLARK, JAMICHAEL CLARK,       §
JACOBIE COTTON, MYA DARTEZ,         §
ROMYNIE DUDLEY, DANIELLA            §
GARCIA, CHRISTIAN HERRING,          §
CHERISH HERRING, MYKEL JANISE,      §
BILLY JOSEPH, COLBYE KUCHERA,       §
JAYD LIVINGS, JUSTICE MAYES, DON    §
MOFF, III, TIMOTHY O'BRIEN, CIERA   §
PATTIE, RODIE RASA, SPEED RASA,     §
PARIS ROBERTS, RAJ ROBISON, AARON   §
SHELDON, TYANNA SIMPSON,            §
MAKENNA VINCENT, ISAIAH             §
WHEATON, and AYANNA WILTZ,          §
                                    §
        Plaintiffs,                 §
                                    §
*versus*                            §        CIVIL ACTION NO. 1:23-CV-369
                                    §
CONTINENTAL CASUALTY COMPANY        §
and JAMES P. WHITE,                 §
                                    §
        Defendants.                 §

## MEMORANDUM AND ORDER

Pending before the court are Defendant Continental Casualty Company's ("Continental")

Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (#51) and Defendant

James P. White's ("White") Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended

Complaint (#52). Plaintiffs filed responses in opposition (#s 58, 59), Defendants Continental and

White (collectively, "Defendants") filed replies (#s 60, 61), and Plaintiffs filed sur-replies (#s 66,

69). Also pending before the court is Defendants' Motion to Strike Evidence Filed with Plaintiffs'

Response to Defendants' Rule 12(b)(6) Motion (#62). Plaintiffs filed a response (#68), Defendants filed a reply (#70), and Plaintiffs filed a sur-reply (#72). Having considered the pending motions, the submissions of the parties, the record, and the applicable law, the court is of the opinion that Defendants' motions (#s 51, 52, & 62) should be granted.

I.    Background

The present suit is a reincarnation of a case that was dismissed by this court in 2022.[1] Despite asserting new causes of action, the facts underlying Plaintiffs' claims remain largely the same. Defendant Continental is an insurance company that provides boiler and machinery insurance, boiler safety inspections, and maintenance evaluations throughout the United States. Continental contracted with the Beaumont Independent School District ("BISD") to conduct safety inspections, provide for the health and safety of workers and the public, and warrant that boiler conditions are safe, healthful, and comply with the applicable laws, regulations, codes, and standards. Accordingly, Continental employed Stuart Shannon Nester ("Nester"), an Authorized Inspector licensed by the National Board of Boiler and Pressure Vessel Inspectors and commissioned by the State of Texas to conduct state-required safety inspections of boilers, to conduct boiler inspections at Marshall Middle School ("Marshall") and other schools within BISD. Continental, individually and/or through Nester, was obligated to document its findings properly and to report those findings to the Chief Boiler Inspector of the State of Texas, Robby Dean Troutt

---

[1] In the previous iteration of this case, No. 1:17-CV-508 ("*Robison* Case"), Plaintiffs asserted causes of action against Continental for negligence, willful and wanton conduct, and negligent undertaking. Ultimately, the case was dismissed by this court on summary judgment, which was affirmed by the United States Court of Appeals for the Fifth Circuit.

("Troutt"). Specifically, Continental was required to report any unsafe boiler conditions and any hazardous conditions affecting the safety of the boilers at Marshall.

On November 5, 2015, Nester conducted a safety inspection of the heating boiler at Marshall. According to Plaintiffs, Nester conducted an inadequate inspection of the heating boiler by failing to place the boiler in operation, as was feasible, and by failing to conduct a proper "external inspection," as required by the Texas Boiler Act ("the Act"). Nevertheless, Nester reported and certified to the State of Texas that he conducted an "external inspection" and that the heating boiler was in a safe condition to continue operation for two years. Plaintiffs, however, aver that the heating boiler was not in a safe condition to continue operation.

Eighty-two days after Nester's inspection, on January 28, 2016, the heating boiler at Marshall began to release carbon monoxide into the school. Plaintiffs allege that the toxic fumes overcame many students and staff, causing immediate symptoms such as headaches, lethargy, vomiting, and unconsciousness. First responders reported to the school, measured high levels of carbon monoxide, and evacuated the building. Those sickened by the fumes were transported to local hospitals and emergency treatment facilities.

A post-incident inspection was conducted by Troutt at Marshall on March 2, 2016, in accordance with the Act. Continental assigned Defendant White, an adjuster for Continental's Large Loss Division, to respond to the carbon monoxide event, along with John Puskar ("Puskar"), a boiler safety expert retained by Continental. During Troutt's investigation, an attempt was made to remove the heating boiler's burners, and signs of excessive deterioration were found in the boiler's firebox. On March 29, 2016, Puskar returned to Marshall on Continental's behalf. Notably, Plaintiffs contend that, between March 2, 2016, and March 29, 2016, Puskar

was instructed to revise his inspection protocol to limit the scope of the inspection to only liquid pressure testing after discussions with White, Troutt, and/or other representatives of Continental. Plaintiffs contend that these instructions were given to avoid exposure of the severely deteriorated condition of the heating boiler's burners that would have been visible to Nester during the original inspection on November 15, 2015, if he had performed an adequate inspection. The burners of the heating boiler were removed and photographed by Puskar during the March 29, 2016, inspection. According to Plaintiffs, these photographs depicted the condition of the burners, as well as evidence of flame roll-out, indicating that the boiler was in a severely compromised position that would cause it to produce excessive amounts of carbon monoxide. Plaintiffs further contend that these conditions would have been visible during Nester's inspection of the heating boiler on November 5, 2015, had he performed an adequate inspection. Puskar then allegedly communicated this information to White.

Despite Puskar's findings, the Investigative Report ("TDLR Report") issued by Troutt merely stated that the carbon monoxide was produced by a flame exiting a hole in the side of the boiler and that such would not have been visible to Nester during his inspection. No photographs were included in the TDLR Report or Continental's claim file. Indeed, Plaintiffs contend that they did not discover the existence of Puskar's photographs until September 2, 2021, when they were produced in response to a subpoena served on Puskar in the prior litigation. According to Plaintiffs, only then did they learn of the dangerous condition of the burners, despite the photographs having been in Continental's possession for many years. Plaintiffs claim, however, that it was too late to use the photographs effectively in the case, as they were only five months out from trial and they could not appropriately respond to the late discovery of Puskar's

photographs.  Additionally, the delayed production of the photographs allegedly deprived Plaintiffs' experts of the opportunity to consider fully key evidence relating to the causation of the carbon monoxide emission.

Ultimately, the court dismissed the prior lawsuit on summary judgment, citing Plaintiffs' inability to satisfy the element of causation.  Now, over two years later, Plaintiffs assert causes of action against Continental and White for fraud, conspiracy to commit fraud, breach of fiduciary duty, and conspiracy to breach fiduciary duty.  Plaintiffs assert that the outcome of the *Robison* Case would have been much different had the true facts regarding the condition of the heating boiler and its burners at the time of the carbon monoxide incident been known.

Plaintiffs filed their Original Petition (#3) in state court on September 1, 2023.  The case was removed to federal court on the basis of diversity jurisdiction and assigned to Judge Michael J. Truncale.  On September 23, 2024, the case was reassigned to the undersigned judge (#28). Plaintiffs filed their Second Amended Complaint (#50) on January 27, 2025.  On February 17, 2025, Continental and White each filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (#s 51, 52).  After receiving Plaintiffs' responses (#s 58, 59), Defendants filed their Motion to Strike Evidence Filed with Plaintiffs' Response to Defendants' Rule 12(b)(6) Motion to Dismiss (#62) on April 4, 2025.

II.    Analysis

A.    Motion to Strike

As a threshold matter, Defendants in their Motion to Strike ask the court to strike the extrinsic evidence attached to Plaintiffs' responses to Defendants' motions to dismiss. Specifically, Defendants contend that the affidavit of Jane S. Leger ("Leger Affidavit") and an

expert report by George R. Wandling, Sr. ("Wandling Report") attached to the responses as Exhibits A and B, respectively, cannot be considered in the context of a Rule 12(b)(6) motion.[2] Because these exhibits were neither attached to the motions to dismiss nor referenced in the Second Amended Complaint ("the complaint"), Defendants aver that the court cannot consider this evidence.

Generally, when considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court may not look beyond the four corners of the plaintiff's pleadings. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *see King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *Hicks v. Lingle*, 370 F. App'x 497, 498 (5th Cir. 2010). The court may, however, consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011))); *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). A court may also review documents "attached to a

---

[2] According to Plaintiffs, the Leger Affidavit discusses additional discovery production from Continental in a separate action arising out of the January 28, 2016, carbon monoxide release incident. Moreover, Plaintiffs assert in their response that the Wandling Report "was attached to provide context in response to Defendants' assertions that, *inter alia*, the root cause of the carbon monoxide release could have been fully analyzed and the causation issues were properly litigated in the *Robison* suit."

response to a motion to dismiss when [they are] sufficiently referenced in the complaint and [their] authenticity is unquestioned." *Am. Gen. Life Ins. Co. v. Mickelson*, No. H-11-3421, 2012 WL 1355591, at *2 (S.D. Tex. Apr. 18, 2012) (citing *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293-94 (5th Cir. 2008) (relying on documents that were "explicitly referenced in the complaint, acknowledged in the answers, and attached to [Plaintiff]'s opposition to the Defendants' motions to dismiss")); *see Blakely v. Andrade*, 360 F. Supp. 3d 453, 472 (N.D. Tex. 2019); *United States ex rel. Colquitt v. Abbott Lab'ys*, 864 F. Supp. 2d 499, 531 n.9 (N.D. Tex. 2012); *Keel v. Wal-Mart Stores, Inc.*, No. 1:11-CV-248, 2012 WL 488248, at *2 (E.D. Tex. Jan. 11, 2012), *adopted by* No. 1:11-CV-248, 2012 WL 469862 (E.D. Tex. Feb. 14, 2012).

Here, because the Leger Affidavit and the Wandling Report were neither referenced in the complaint nor attached to the motion to dismiss, the court will not consider them at this stage in the proceedings.[3]  Indeed, to hold otherwise would be to treat the pending motions to dismiss as motions for summary judgment under Rule 56(c).  *Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101, 111 (5th Cir. 2022); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  A factual assertion or theory of liability not set forth in the complaint is not properly before the court on a motion to dismiss.  *See Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 793 n.2 (5th Cir. 2014) ("Review of a Rule 12(b)(6) dismissal is, by its very nature, limited to the allegations and theories set forth in the complaint that the district court had before it when

---

[3] The district court has "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 964 (S.D. Tex. 2016) (quoting *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988)).  This discretion to examine material beyond the pleadings should only be exercised "sparingly." *LCP RCP, LLC v. Ally Bank*, No. 3:19-cv-00396-M, 2019 WL 13095364, at *2 (N.D. Tex. July 31, 2019) (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664 (N.D. Tex. 2011)).

granting the motion to dismiss."); *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL 5946863, at *1 n.3 (N.D. Tex. Oct. 7, 2020) ("This court has repeatedly held that, when ruling on a motion to dismiss, the court does not consider additional facts that are alleged in a response brief but not in the complaint." (collecting cases)); *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 620 n.10 (N.D. Tex. 2017) (rejecting plaintiff's attempt to introduce a theory of liability for the first time in response to defendant's motion to dismiss); *Elton Porter Marine Ins. Agency v. Markel Am. Ins. Co.*, No. H-11-4432, 2012 WL 2050254, at *2 (S.D. Tex. June 6, 2012) ("[I]t is insufficient to allege further facts in the response to the motion to dismiss; the factual matter must be contained in the pleadings themselves."). Thus, in order to keep Defendants' motions and the court's analysis within the realm of Rule 12(b)(6), the court will not consider any extrinsic evidence. Accordingly, Defendants' Motion to Strike Evidence Filed with Plaintiffs' Response to Defendants' Rule 12(b)(6) Motion to Dismiss (#62) is granted.

B.     Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Spano ex rel. C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262 (5th Cir. 2023) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of*

*Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)); *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 896 (5th Cir. 2022); *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020); *accord Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2019). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Mesa*, 582 U.S. 548, 550 (2017); *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024), *cert. denied sub nom. Benfer v. Baytown*, No. 24-823, 2025 WL 663718 (U.S. Mar. 3, 2025); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021); *IberiaBank Corp.*, 953 F.3d at 345 (citing *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)). The court, however, does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *accord Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022); *Modelist v. Miller*, 445 F. App'x 737, 739 (5th Cir. 2011); *see Damond*, 127 F.4th at 938 ("A claim is . . . frivolous when it 'lacks an arguable basis either in law or in fact.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Oscar Renda Contracting,*

*Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006) (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)); *Damond*, 127 F.4th at 938; *Ramming*, 281 F.3d at 161.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Willis v. W. Power Sports, Inc.*, No. 23-10687, 2024 WL 448354, at *1 (5th Cir. Feb. 6, 2024); *Spano ex rel. C.S.*, 65 F.4th at 262; *King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022); *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019).  "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 355.  Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Walker*, 938 F.3d at 734 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see Damond*, 127 F.4th at 937-38 (noting that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678)); *King*, 46 F.4th at 355.  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *abrogated on other grounds by Twombly*, 550 U.S. at 563)); *Walker*, 938 F.3d at 734.  "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017)); *EPCO*

10

*Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006); *see Jones v. Bock*, 549 U.S. 199, 215 (2007).

### 1.   Res Judicata

Res judicata is an affirmative defense that must be specifically pleaded under FED. R. CIV. P. 8(c) and is "ordinarily lost if not timely raised." *Arizona v. California*, 530 U.S. 392, 394 (2000); *see Rivet v. Regions Bank*, 522 U.S. 470, 476 (1998); *Mowbray v. Cameron County*, 274 F.3d 269, 281 (5th Cir. 2001). "[W]hile res judicata is generally an affirmative defense to be pleaded in a defendant's answer . . . there are times when it may be raised on a Rule 12(b)(6) motion." *Meyers v. Textron, Inc.*, No. 13-10023, 2013 WL 5461840, at *1 (5th Cir. Oct. 2, 2013). The United States Court of Appeals for the Fifth Circuit has explained:

> [R]es judicata may be properly raised on a motion to dismiss when the facts are admitted or not controverted or are conclusively established. . . . When all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion without requiring an answer.

*Id.* "[D]ismissal under Rule 12(b)(6) on res judicata grounds is appropriate when the elements of res judicata are apparent on the face of the pleadings." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021) (quoting *Murry v. Gen. Servs. Admin.*, 553 F. App'x 362, 364 (5th Cir. 2014)); *see In re 3 Star Props., L.L.C.*, 6 F.4th 595, 604 (5th Cir. 2021) ("A court may dismiss claims as barred by res judicata if the 'bar is apparent from the pleadings and judicially noticed facts.'" (quoting *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019))). Courts may also consider documents attached to or incorporated by reference in the complaint. *See Guardino v. Hart*, No. 22-20278, 2023 WL 3818378, at *3 (5th Cir. June 5, 2023).

Evaluating a Rule 12(b)(6) motion based on res judicata necessarily involves the review of a prior case's pleadings to determine whether similar allegations are being made in the present case. *Blair v. Yum! Brands, Inc.*, No. 1:19CV322-HSO-RPM, 2020 WL 5073971, at *4 (S.D. Miss. Aug. 20, 2020), *aff'd*, 832 F. App'x 893 (5th Cir. 2021). Hence, a court may take judicial notice of publicly available pleadings and opinions to assess whether res judicata's requirements are satisfied. *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020); *Hall v. Hodgkins*, 305 F. App'x 224, 226-27 (5th Cir. 2008). The court therefore takes judicial notice of the prior litigation[4] which took place in this court, Case No. 1:17-CV-508, and in the Fifth Circuit, Case No. 22-40071. *See* FED. R. EVID. 201.

Federal common law governs the preclusive effect of a judgment rendered by a federal court sitting in diversity. *Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002 (5th Cir. 2022). In accordance with federal common law, however, "federal courts sitting in diversity apply the preclusion law of the forum state unless it is incompatible with federal interests." *Id.* (quoting *Anderson*, 953 F.3d at 314). Here, the judgment in the prior litigation was entered by this court, while exercising diversity jurisdiction. Thus, federal law applies in this case, which requires that the court look to Texas law to determine the preclusive effect of the judgment entered in the *Robison* Case.

---

[4] Specifically, the court takes judicial notice of the following documents attached to Defendants' Motions to Dismiss: Plaintiffs' Fifth Amended Complaint (*Robison* ECF #190); January 6, 2022, Memorandum and Order granting Continental's Motion to Exclude Expert Testimony of Bruce McDaniel (*Robison* ECF #218); January 6, 2022, Memorandum and Order granting Continental's Motion for Summary Judgment (*Robison* ECF #219); January 6, 2022, Final Judgment (*Robison* ECF #220); The Fifth Circuit's December 20, 2022, Opinion (*Robison* ECF #228-1); and The Fifth Circuit's December 20, 2022, Judgment (*Robison* ECF #228). The court also takes judicial notice of Plaintiffs' Supplement to Plaintiffs' Response in Opposition to Defendant Continental Casualty Company's Motion for Summary Judgment and Supporting Brief (*Robison* ECF #206).

"Res judicata, also known as claim preclusion, prevents the relitigation of a claim or cause of action that was adjudicated and resolved by a final judgment, as well as all related matters that with the use of diligence could or should have been litigated in the prior suit." *Hill v. TX-AN Anesthesia Mgmt., LLP*, 443 S.W.3d 416, 424 (Tex. App.—Dallas 2014, no pet.) (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)); *McNeil Ints., Inc. v. Quisenberry*, 407 S.W.3d 381, 387 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet.). "When a prior judgment is offered in subsequent litigation in which there is identity of parties, issues, and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment." *Nat'l Union Fire Ins. Co. v. John Zink Co.*, 972 S.W.2d 839, 846 (Tex. App.—Corpus Christi 1998, pet. denied); *see Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 234 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Valley Forge Ins. Co. v. Ryan*, 824 S.W.2d 236, 238 (Tex. App.—Fort Worth 1992, no writ). Res judicata requires: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Harmon v. Dallas County*, 927 F.3d 884, 890 (5th Cir. 2019) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)); *accord Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018); *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017). "[T]he doctrine of res judicata is based upon [general policies] which include: promotion of judicial economy and the stability of judgments; and the prevention of vexatious litigation, double recoveries, and inconsistent judgments." *Valley Forge Ins. Co.*, 824 S.W.2d at 238; *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 629 (Tex. 1992); *McNeil Ints., Inc.*,

407 S.W.3d at 387; *Welch v. Hrabar*, 110 S.W.3d 601, 609 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

a.    <u>Prior Final Judgment on the Merits</u>

"A final judgment is entitled to res judicata effect even if such judgment did not result from a trial." *Castaneda v. Abacus Funding Grp.*, No. 05-23-00623-CV, 2025 WL 383613, at *4 (Tex. App.—Dallas Feb. 4, 2025, pet. denied).  An order granting summary judgment is a final judgment on the merits for claim preclusion purposes.  *See Jacaman v. U.S. Bank, N.A. as Tr. for Bear Stearns Asset Backed Sec. 1 Tr. 2044-AC6*, No. 04-22-00370-CV, 2024 WL 590441, at *3 (Tex. App.—San Antonio Feb. 14, 2024, pet. denied) (finding that summary judgment orders in a prior suit were "final determinations on the merits from a court of competent jurisdiction"); *Pines of Westbury, Ltd. v. Paul Michael Const., Inc.*, 993 S.W.2d 291, 294 (Tex. App.—Eastland 1999, pet. denied) ("A summary judgment is a final judgment on the merits that bars relitigation of the case.").  Here, summary judgment was entered in the *Robison* case, leaving no outstanding issues to litigate, and the Fifth Circuit affirmed the court's order.  *See Robison v. Cont'l Cas. Co.*, No. 22-40071, 2022 WL 17819601 (5th Cir. Dec. 20, 2022).  Moreover, no argument was made that this court was not one of competent jurisdiction.  Therefore, the first res judicata element is satisfied.

b.    <u>Identity of Parties or Those in Privity</u>

"Texas courts have been clear that there is no categorical rule for privity; instead the courts look to 'the circumstances of each case.'"  *In re 3 Star Props., L.L.C.*, 6 F.4th at 606 (quoting *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007)); *see Nalle v.*

14

*Moreland*, No. 03-21-00538-CV, 2023 WL 2025709, at *3 (Tex. App.—Austin Feb. 16, 2023, no pet.). "[T]wo parties are said to be in privity when they share an 'identity of interests in the basic legal right that is the subject of litigation.'" *In re Erlewine* ("*Erlewine*"), 349 F.3d 205, 210 (5th Cir. 2003) (quoting *Amstadt*, 919 S.W.2d at 653); *see Flightline Escrow, LLC v. Leavelle*, No. 08-25-00051-CV, 2025 WL 1798645, at *12 (Tex. App.—El Paso June 30, 2025, no pet.). "A party can be in privity in at least three ways: (1) it can control an action even if it is not a party to it; (2) its interests can be represented by a party to the action; or (3) it can be a successor-in-interest, deriving its claim through a party to the prior action." *Samuel v. Fed. Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234-35 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Amstadt*, 919 S.W.2d at 653); *see Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022).

As Defendants correctly observe, Plaintiffs' complaint acknowledges that each of them was a plaintiff in the *Robison* suit. It is also undisputed that Continental was a defendant in *Robison*, while White was not. Defendants argue, however, that while White was not a party in *Robison*, he was in privity with Continental by virtue of his role as Continental's adjuster. According to the complaint, White was Continental's Large Loss Adjuster who was assigned by Continental to respond to the carbon monoxide incident at Marshall. White is also described by Plaintiffs as "a boiler safety expert retained by Continental" who attended the March 2, 2016, post-incident inspections on Continental's behalf. Thus, at a minimum, White acted as Continental's agent in the heating boiler investigations. *See Nat'l Land Records, LLC v. Peirson Patterson, LLP*, No. 12-16-00205-CV, 2017 WL 2829331, at *3 (Tex. App.—Tyler June 30, 2017, no pet.) ("When

15

parties are in a vicarious relationship, a judgment for the principal bars a later suit against the agent.").

Notably, White was not involved in the events leading up to the heating boiler emission and was only mentioned once in the *Robison* complaint. He was involved, however, in the subsequent investigation that occurred after the emission, but before the *Robison* suit was filed. As the court notes below, these events are all transactionally related. Because White participated in the investigation as Continental's adjuster, they shared an interest in determining the cause of the boiler emission. Moreover, White's interests actually were represented by Continental in the prior litigation because the same conduct is at issue in both cases—the result of Continental's claim investigation, the condition of the heating boiler, and the cause of the carbon monoxide emission. Even in the present ligation, all of the allegations in the complaint attributable to White are likewise attributable to Continental. Stated another way, White and Continental share the same basic legal interests in defending against Plaintiffs' claims. Therefore, White is considered to be in privity with Continental for purposes of res judicata by virtue of their principal-agent relationship as well as the fact that White and Continental share the same interests in adjudicating the facts surrounding the heating boiler emission and subsequent investigation. The second res judicata element is satisfied.

### c.   Claims that Could Have Been Raised in the First Action

With respect to the third element, Texas follows the transactional approach: "a judgment in an earlier suit 'precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.'" *Harmon*, 927 F.3d at 890 (quoting

*Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992)); *Sims*, 894 F.3d at 644-45 (citing *Weaver v. Tex. Cap. Bank*, 660 F.3d 900, 907 (5th Cir. 2011)).  "A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation" as well as "an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action." *Barr*, 837 S.W.2d at 630; *Bd. of Adjustment of City of Dall. v. Billingsley Fam. Ltd.*, 442 S.W.3d 471, 475 (Tex. App.—Dallas 2013, no pet.).  "This determination should be made 'pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage."'" *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 686 (S.D. Tex. 2014) (quoting *Daccach*, 217 S.W.3d at 449).  "Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Barr*, 837 S.W.2d at 630 ); *see Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021).

As to the third element, Plaintiffs' claims in both the *Robison* case and the current suit are based on "the same nucleus of operative facts"—the heating boiler emission at Marshall.  Plaintiffs argue that the court should divide the facts into two distinct time frames: (1) the events leading up to the heating boiler emission and alleged mass poisoning that were central to the *Robison* case; and (2) the subsequent investigation as to the cause of the leak, on which Plaintiffs now base the instant suit.  In reality, all of the facts alleged in Plaintiffs' complaint are connected to the facts alleged in *Robison*.

Plaintiffs' complaint centers on two allegedly improper actions taken by Defendants that gave rise to the present litigation.[5]  First, regarding the post-incident investigation of the heating boiler, Plaintiffs assert that "between the inspection on March 2, 2016[,] and the inspection on March 29, 2016[,] Mr. Puskar was instructed to revise his inspection protocol to limit the scope of the inspection to only liquid pressure testing after discussions with Defendant WHITE, Troutt, and/or other representative(s) of Defendant CONTINENTAL."  Further, "[t]hese instructions were made to avoid exposure of the severely deteriorated condition of the Heating Boiler's burners that would have been visible to Defendant CONTINENTAL's inspector, Nester, during his inspection on November 5, 2015 had he performed an adequate inspection."

Second, Plaintiffs allege that key evidence relating to the cause of the heating boiler emission, the photographs taken by Puskar on March 29, 2016, were "withheld and concealed by Defendants for over five (5) years and five (5) months."  Plaintiffs contend that "[t]hese photographs show the severely deteriorated condition of the Boiler that should have been visible to Nester on November 5, 2015, including, but not limited to, the significant amount of crumbled refractory on and underneath the burner tubes and the severe carbon buildup on the water tube fins."  When Plaintiffs finally obtained these photographs in response to a subpoena on September 2, 2021, Plaintiffs contend that it was too late to respond meaningfully to the untimely discovery, as trial was merely five months away.  Thus, Plaintiffs argue that their "experts were deprived of the opportunity to f[u]lly consider the key evidence and opine regarding how the condition of the

_____

[5] While Plaintiffs make numerous allegations against Nester and Troutt regarding their purported involvement in the coverup, neither Nester nor Troutt is a party to this lawsuit.  In fact, Nester was dismissed from this suit by Judge Truncale in an order dated September 23, 2024, as he was improperly joined.

burners caused the production of the dangerous carbon monoxide." Moreover, Plaintiffs contend that because these photographs were left out of Troutt's TDLR Report, which focused on the interlock device, Plaintiffs' experts were misled as to the cause of the incident.

Litigation in *Robison* and the present action share the same nucleus of operative fact. Adhering to the transactional test, all of the above facts are interrelated, occurred within the same time frame, and share the same origin. The *Robison* case hinged on the allegedly negligent inspection of the heating boiler and the cause of the emission. Here, this case likewise concerns the cause of the emission and the culpability of Continental and its agents. Now, Plaintiffs merely fill in the gaps as to the investigation leading up to the prior litigation—all of which transpired before a final judgment was entered in the *Robison* case. Moreover, Plaintiffs include an entire section in their complaint dedicated to illustrating the events leading up to the boiler emission, as well as the emission itself, as these facts are necessary to understand the Plaintiffs' claims at bar. Thus, the court finds that the facts in *Robison* and the facts in the present case are transactionally related such that res judicata may apply.

While the transactional test has been met, a question remains as to whether Plaintiffs' claims could have been brought in the prior litigation. Res judicata does not apply to claims that were not ripe when the initial lawsuit was filed. *Eagle Oil & Gas Co.*, 619 S.W.3d at 706; *Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex. 2001). "Under the ripeness doctrine, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000). "Additionally, a judgment in one suit will not bar 'a subsequent suit on the same question between the same

parties where, in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties.'" *Wendt v. Moore*, No. 01-23-00128-CV, 2024 WL 3528437, at *8 (Tex. App.—Houston [1st Dist.] July 25, 2024, no pet.) (quoting *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2001, no pet.)).

To determine whether Plaintiffs' claims were ripe at the time the *Robsion* suit was filed, the court looks to the elements of each claim now asserted. Importantly, each of Plaintiffs' claims requires a finding of damages. In Texas, common law fraud may consist of an affirmative misrepresentation or, in certain circumstances, the concealment or non-disclosure of a material fact. To recover for fraud through affirmative misrepresentation, the plaintiff must establish that:

(1)    the defendant made a material representation concerning an existing fact;

(2)    the representation was false when it was made;

(3)    the speaker knew the misrepresentation was false, or made it recklessly without knowledge of its truth and as a positive assertion;

(4)    the speaker made the misrepresentation with the intent that it should be acted upon;

(5)    the plaintiff acted with justifiable reliance on the misrepresentation; and

(6)    the plaintiff suffered injury as a result.[6]

---

[6] Based on the facts alleged in the complaint, Plaintiffs may also have stated a claim for fraud by concealment. Because Plaintiffs fail to specifically allege fraud by concealment and primarily address the elements of fraud by affirmative misrepresentation, however, the court addresses only the elements of fraud by affirmative misrepresentation.

20

*Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 291 (5th Cir. 2023); *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 350 (5th Cir. 2021) (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)).

Even assuming that the first five elements were met at the time the *Robison* suit was filed on October 24, 2017, Plaintiffs had yet to suffer an injury as a result of the alleged fraud. Plaintiffs allege that the operative facts constituting the damages element of this claim did not exist until the judgment was finalized after the appeal in *Robison* to the Plaintiffs' detriment. In other words, Plaintiffs claim that the final judgment in the prior litigation is the injury, and the damages are the loss of the ability to recover in that case. The court does not agree that the injury arose only on entry of the final judgment in the prior case. Rather, any cause of action that Plaintiffs could have brought based on Defendants' allegedly fraudulent conduct accrued at the latest when Plaintiffs discovered the photographs on September 2, 2021. Nevertheless, this element was not satisfied at the time Plaintiffs filed the *Robison* suit on October 24, 2017. *See Wendt*, 2024 WL 3528437, at *12 (holding that petitioner need not know the precise amount of damages she would incur based on the trial court's improper award of attorney's fees, as she knew before judgment was rendered that attorney's fees would likely be sought). Furthermore, Defendants fail to address the ripeness requirement in their motions, incorrectly applying federal law to the issue.[7] Thus, Plaintiffs' claim of fraud against Continental and White cannot be barred by res judicata. *See Welsh v. Fort Bend Indep. Sch. Dist.*, 860 F.3d 762, 765 (5th Cir. 2017) (applying Texas law and

---

[7] In arguing that res judicata bars Plaintiffs' claims, Defendants cite *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279 (5th Cir. 1989). The *Lubrizol* court found that the plaintiffs' fraud claims were barred by res judicata based on facts analogous to those alleged in the case at bar. The court's holding, however, is not binding in the present case, as it is based on federal law instead of Texas law, which applies here.

concluding petitioner was not required to bring a claim in prior litigation that was not mature at the time the suit was filed); *Bonin v. Sabine River Auth. of Tex.*, No. 1:19-CV-00527-MJT, 2021 WL 3616651, at \*7 (E.D. Tex. May 17, 2021), *adopted by* No. 1:19-CV-00527, 2021 WL 2766456 (E.D. Tex. July 2, 2021) (noting that, under Texas law, "the narrow question is whether Plaintiffs' federal takings claims were ripe when Plaintiffs *filed* their first lawsuit—not whether the federal claims ripened at any point during the first lawsuit").

Similarly, Plaintiffs could not have brought their breach of fiduciary duty claim at the time *Robison* was filed.  The elements of a breach of fiduciary duty claim are:  (1) a fiduciary relationship existed between the plaintiff and the defendant; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in injury to the plaintiff or benefit to the defendant. *Mesquite Services, LLC v. Standard E&S, LLC*, 610 S.W.3d 548, 564 (Tex. App.—Amarillo 2020, pet. denied); *Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.). Because no injury had occurred at the time of filing, as with Plaintiffs' claim for fraud, the claim for breach of fiduciary duty was not ripe.  *See Bhatia v. Woodlands N. Houston Heart Ctr., PLLC*, 396 S.W.3d 658, 672 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (noting that a breach of fiduciary duty cause of action requires a showing of "injury" to the claimant, not necessarily actual damages).

Plaintiffs' claim for conspiracy to commit fraud and conspiracy to commit breach of fiduciary duty were likewise unripe at the time the *Robison* suit was filed.  Civil conspiracy requires the plaintiff to show:  (1) two or more persons agree upon an object, (2) a meeting of minds on the object to be accomplished, and (3) one or more overt, unlawful acts committed in furtherance of the conspiracy, (4) which results in damages.  *Guevara v. Lackner*, 447 S.W.3d

566, 582 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.).  Thus, the claim of conspiracy accrues when each underlying tort of the conspiracy damages the plaintiff.  *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 144 (Tex. 2019).  As stated above, Plaintiffs suffered no damages as a result of Defendants' actions regarding fraud and breach of fiduciary duty at the time of filing.  Therefore, res judicata cannot bar Plaintiffs' claims for fraud, conspiracy to commit fraud, breach of fiduciary duty, or conspiracy to breach fiduciary duty.

### 3.    Collateral Estoppel

Defendants additionally contend that Plaintiffs' claims are barred by the doctrine of collateral estoppel.  "Under Texas law, collateral estoppel 'bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action.'"  *Matter of Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996) (quoting *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)).  Collateral estoppel, or issue preclusion, therefore, dictates that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see Ex parte Guinther*, 982 S.W.2d 506, 509 (Tex. App.—San Antonio 1998, no writ); *State v. Minor*, 981 S.W.2d 481, 482 (Tex. App.—Eastland 1998, no writ).  In other words, "[a]pplication of collateral estoppel requires that there be a final judgment on the merits."  *Gober*, 100 F.3d at 1201 (citing *Texas v. Wellington Ress. Corp.*, 706 F.2d 533, 536-37 (5th Cir. 1983)); *see Starnes v. Holloway*, 779 S.W.2d 86 (Tex. App.—Dallas 1989, writ denied) (citing *Gareis v. Gordon*, 243 S.W.2d 259, 260 (Tex. Civ. App.—Galveston 1951, no writ); *Ferguson v. Gleason*, 197 S.W.2d 863, 865 (Tex. Civ. App.—Amarillo 1946, no writ)).  "A final judgment is one which disposes

of all legal issues between all parties." *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (citing *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985)).   A party asserting collateral estoppel must establish:  (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990); *Wilson v. Fleming*, 669 S.W.3d 450, 457 (Tex. App.—Houston [14th Dist.] 2021), *aff'd on other grounds sub nom. George Fleming & Fleming & Assocs., L.L.P. v. Wilson*, 694 S.W.3d 186 (Tex. 2024).  The purpose of collateral estoppel is to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments. *First Sabrepoint Cap. Mgmt., L.P. v. Farmland Partners Inc.*, 712 S.W.3d 75, 85 (Tex. 2025).

Here, in order to prove the claims as alleged in the complaint, Plaintiffs would have to provide evidence that Defendants knew or should have known that the cause of the boiler emission revealed in their investigation was something different from what they communicated to others, including Plaintiffs.   Specifically, regarding fraud, Plaintiffs allege that Defendants made representations regarding the investigation, the condition of the heating boiler, the reasons for the carbon monoxide release, and Nester's culpability,[8] and that Defendants either knew they were false or made them recklessly as a positive assertion without knowledge of their truth.  Similarly, Plaintiffs allege that Defendants breached their fiduciary duties to Plaintiffs by concealing the

---

[8] Plaintiffs allege repeatedly in their complaint that Nester was culpable for failing to inspect the heating boiler while in operation since this was feasible and required by the Act.  This issue, however, was directly litigated in the *Robison* suit and was explicitly considered by the court in rendering summary judgment in favor of Continental.

condition of the heating boiler, the cause of the carbon monoxide release as determined during the investigation of the carbon monoxide incident and material evidence related to that condition, specifically, the photographs taken by Puskar. Moreover, Plaintiffs claim that Defendants conspired to commit these torts to conceal information in order to escape liability for the negligent inspection. Thus, for each of the claims here, Plaintiffs would be required to establish that Defendants were not being truthful about the cause of the carbon monoxide emission. This necessarily puts the causation issue back on the table for this litigation.[9] The court's issue preclusion analysis therefore focuses on the causation element.

### a.    Fully and Fairly Litigated

Regarding the first element, Texas courts consider three procedural matters: (1) whether the parties were fully heard, (2) that the court supported its decision with a reasoned opinion, and (3) that the decision was subject to appeal or was in fact reviewed on appeal. *Farmland Partners*, 712 S.W.3d at 85-86. Plaintiffs' arguments concerning issue preclusion center around this element. They claim that "[t]he causation issue was never fully and fairly litigated in the *Robison* suit because the existence of critical causation evidence was concealed and representations made in the state-required investigation report were not accurate." Plaintiffs further contend that "after the key documents and information were finally produced, there was no time to fully examine and determine the implications of the key evidence."

---

[9] Although the court held above that the Wandling Report will not be considered at this juncture, the mere fact that Plaintiffs tried to include a new expert report on causation indicates that Plaintiffs are attempting to relitigate that element in the case at bar.

Although the timing of Defendants' production of the photographs was certainly not ideal, the material facts surrounding the causation issue were nonetheless fully and fairly litigated before the district court and the Fifth Circuit in *Robison*. Extensive briefing and evidence were submitted to the court regarding the cause of the heating boiler emission in connection with the motion for summary judgment. As Defendants point out, the causation element was at issue in *Robison* via the summary judgment motion, the motion to exclude Plaintiffs' boiler expert, and the court's extensive analysis in the two January 6, 2022, Memoranda and Orders. Additionally, Plaintiffs actually submitted the photographs to the court, arguing in their supplemental response to the motion for summary judgment that:

> Mr. Puskar informed the parties that the photographs of [the Heating Boiler] depicted a boiler: (i) entering a "death spiral;" (ii) suffering from extensive refractory deterioration; (iii) severe plugging of the boiler's fire tubes; (iv) severe obstruction of the boiler's (water) heating tubes; (v) extensive evidence of water leaking into the flue; (vi) evidence of flame rollout, another tell-tale sign of carbon monoxide production that was likely visible at the time of Continental's November 5, 2015 inspection; and (vii) obvious evidence of incomplete combustion related to the boiler's operation.[10]

Moreover, Plaintiffs stated in their supplemental response that since Puskar had been deposed, "Plaintiffs' experts, *i.e.*, Mr. McDaniel, will be supplementing their reports—Mr. Richard Bost already provided his supplemental report." Not only did Plaintiffs depose Puskar on multiple occasions regarding the photographs, the transcripts of which were tendered to the court, but Plaintiffs also submitted new expert reports discussing those photographs. In fact, the court

---

[10] Notably, these conditions seem to be those which Plaintiffs now allege in their complaint actually caused the emission. In discussing the true cause, Plaintiffs refer to "the significant amount of crumbled refractory on and underneath the burner tubes and the severe carbon monoxide buildup on the water tube fins" and "the obvious evidence [which] demonstrated the Heating Boiler was entering a dangerous 'death-spiral'" that would have been visible to Nester's November 5, 2025, inspection.

considered Puskar's deposition testimony in rendering its opinion on the motion for summary judgment, noting that Puskar, in discussing issues he observed with the heating boiler post-incident, could not opine on whether flame rollout caused the carbon monoxide emission, when asked.

Even if McDaniel had more time to scrutinize the photographs, his efforts would have been futile. In granting the Motion to Exclude Expert Testimony of Bruce McDaniel, the court found that because McDaniel did not perform his own evaluation and is not qualified to opine about the standard of care for boiler inspections in Texas, his testimony was not reliable and he could not offer an opinion as to whether Nester's inspection was deficient or a cause of the carbon monoxide emission at Marshall. Moreover, McDaniel's conflicting assertions regarding causation were insufficient to constitute a reliable causation opinion, as the court found them to be shifting, speculative, and inconsistent, noting that his erroneous statement and lack of knowledge regarding the applicable boiler inspection laws in Texas indicated that his expert testimony on these subjects was not trustworthy or proper for the jury's consideration. The court therefore concluded that McDaniel was prohibited from "testify[ing] as to the applicable legal requirements and proper scope of state-mandated boiler inspections in Texas, the standard of care for boiler inspectors in Texas, the causation of the carbon monoxide discharge at [Marshall], or how Nester's alleged acts or omissions caused or contributed to the carbon monoxide emission incident." After excluding McDaniels's testimony, and in light of Puskar's testimony at deposition that he did not know whether flame rollout caused the carbon monoxide release, the court ultimately found that Plaintiffs could not prove the causation element in *Robison*. On appeal, the parties again

27

submitted briefs regarding the issue of causation, and the Fifth Circuit affirmed this court's decision.

Thus, contrary to Plaintiffs' contention, the parties had a sufficient opportunity to fully litigate causation. Even within the context of the newly discovered evidence, trial was still five months away. Plaintiffs' Fifth Amended Complaint in the *Robison* case, for which the court granted leave, was filed on October 21, 2021—seven weeks after the photographs were produced. Neither Puskar's photographs nor his deposition testimony was mentioned in the Fifth Amended Complaint. If Plaintiffs did not believe that they would be afforded enough time to use the photographs properly, there were a number of procedural mechanisms available to them which they did not attempt to utilize. Namely, Plaintiffs could have moved to amend the scheduling order based on this information, moved for a continuance, or, after the final judgment was rendered, filed a motion under Federal Rule of Civil Procedure 60(b)(3) challenging the judgment based on fraud, misrepresentation, or misconduct by an opposing party. Because all parties were heard on the issue, the court supported its decision with reasons and facts, and the opinion was reviewed and affirmed on appeal, the court concludes that the facts surrounding the issue of causation were fully and fairly litigated.

### b.    Facts were Essential to the Judgment

Regarding this factor, Defendants aver that the issue was obviously necessary to support to judgment in *Robison*. The court agrees. Plaintiffs' inability to satisfy their burden on causation was the basis for both the January 6, 2022, judgment and the Fifth Circuit's December 20, 2022, opinion affirming that judgment. Thus, the second element of issue preclusion is satisfied.

c.    Parties were Cast as Adversaries

Concerning this element, mutuality of parties is not necessary, "as it is only required 'that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation.'" *Id.* (quoting *Eagle Props.*, 807 S.W.2d at 721).  As the court notes in the above analysis, it is undisputed that Plaintiffs and Continental were adversaries in the prior litigation.  In addition, Continental and White are in privity for preclusion purposes.  *See BP Auto. LP v. RML Waxahachie Dodge, LLC*, 517 S.W.3d 186, 200 (Tex. App.—Texarkana 2017, no pet.) ("The determination of whether parties are in privity is the same for both res judicata and collateral estoppel.").  Plaintiffs allege the same facts that were before the court in *Robison*—the result of Continental's claim investigation, the condition of the heating boiler, and the cause of the carbon monoxide emission. Plaintiffs also disputed the evidence offered by Continental to show that Continental (through Nester) was not culpable.  White, as an agent of Continental who investigated events surrounding the *Robison* suit, cannot now be held individually liable for that conduct when it was previously litigated by Continental.  *Flightline Escrow, LLC v. Leavelle*, No. 08-25-00051-CV, 2025 WL 1798645, at *12 (Tex. App.—El Paso June 30, 2025, no pet. h.) (noting that the Defendants shared the same basic "legal interest" in defending against plaintiff's claims in attempting to establish that they did not engage in any wrongdoing with respect to concealing financial information).

At their core, the preclusion doctrines are driven by equity principles.  *See Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 848 (Tex. App.—San Antonio 1997, pet. denied). Regardless of how Plaintiffs repackage their claim, they are attempting to relitigate the issue of the cause of the carbon monoxide emission at Marshall after this court has already entered

judgment in favor of Continental on that issue. Moreover, Plaintiffs seek the same damages that they sought in *Robison*—damages for the loss of the opportunity to recover in tort for personal injuries and damages due to the carbon monoxide emission and for some, the resulting alleged permanent brain damage purportedly caused by the toxic release. Issue preclusion bars Plaintiffs from getting another bite at the apple.

### 3.    Relief From Judgment Under Rule 60

Due to the court's conclusion that Plaintiffs' claims are barred by collateral estoppel, the only way for Plaintiffs to challenge the court's final judgment in *Robison* is by filing a motion under Rule 60. Indeed, Plaintiffs contend that Defendants' motions to dismiss should be denied because Rule 60(d)(1) specifically authorizes their independent action now before the court. Rule 60(b) of the Federal Rules of Civil Procedure provides that a court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1)    mistake, inadvertence, surprise, or excusable neglect;

(2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)    the judgment is void;

(5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief.

FED. R. CIV. P. 60(b). A motion brought under Rule 60(b) must be made within a "reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order

or the date of the proceeding." FED. R. CIV. P. 60(c). In the present action, Plaintiffs could have brought a Rule 60(b) motion to challenge the court's judgment based on fraud, misrepresentation, or misconduct by an opposing party, as they contend that Defendants fraudulently concealed key information during the pendency of litigation. *See Areizaga v. ADW Corp.*, 796 F. App'x 205, 207 (5th Cir. 2020) (holding that misconduct under Rule 60(b)(3) encompasses knowingly failing to disclose evidence called for by a discovery order); *MMAR Grp., Inc. v. Dow Jones & Co.*, 187 F.R.D. 282, 285 (S.D. Tex. 1999) (noting that Rule 60(b)(3) applies to misconduct in withholding information called for by discovery). Plaintiffs nevertheless failed to file a Rule 60(b) motion within one year of the final judgment. Thus, Plaintiffs' only avenue for challenging the final judgment is under Rule 60(d)(1).

"Rule 60(d)(1) provides that Rule 60 does not limit the district court's power to 'entertain an independent action to relieve a party from a judgment, order, or proceeding.'" *Johnson v. Davis*, 746 F. App'x 375, 380 (5th Cir. 2018) (quoting FED. R. CIV. P. 60(d)(1)). "The Fifth Circuit has identified five elements of an independent action in equity under [Rule] 60(d)(1): (1) a prior judgment which 'in equity and good conscience' should not be enforced; (2) a meritorious claim in the underlying case; (3) fraud, accident, or mistake which prevented the party from obtaining the benefit of their claim; (4) the absence of fault or negligence on the part of the party; and (5) the absence of an adequate remedy at law." *Rhodes v. Dir., TDCJ*, No. 3:19-CV-1076-K-BN, 2021 WL 4296409, at *5 (N.D. Tex. Aug. 12, 2021), *adopted sub nom. Rhodes v. Dir., TDCJ-CID*, No. 3:19-CV-1076-K, 2021 WL 4295407 (N.D. Tex. Sept. 21, 2021) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 667-68 (5th Cir. 1981)). Importantly, however, "[a] party cannot relitigate 'in the independent equitable action issues that

were open to litigation in the former action where he had a fair opportunity to make his claim or defense in that action.'" *Hamner v. Moreno*, No. CV H-21-2380, 2022 WL 1508982, at *2 (S.D. Tex. Apr. 21, 2022), *adopted by* No. CV H-21-2380, 2022 WL 1507203 (S.D. Tex. May 12, 2022) (quoting *Sinesterra v. Roy*, 347 F. App'x 9, 10 (5th Cir. 2009)).  In addition, "if a plaintiff's allegations could form the basis for a Rule 60(b)(2) or (b)(3) motion, but the action is outside the one-year limitations period and does not rise to the level of a miscarriage of justice, an independent action must fail." *ABC Utils. Servs. Inc. v. Orix Fin. Servs. Inc.*, 98 F. App'x 992, 994 (5th Cir. 2004); *accord Hamner*, 2022 WL 1508982, at *2.

Here, it cannot be said that the judgment "in equity and good conscience" should not be enforced.  The court has already concluded that Plaintiffs had a fair opportunity to litigate their claims fully, even though the photographs were not produced until five months before trial.  Thus, Plaintiffs did not obtain the benefit of their claim simply because they failed to avail themselves of the existing opportunities.  Moreover, "[a]n independent action cannot be made a vehicle for the relitigation of issues." *Instituto Mexicano Del Seguro Soc. v. Orthofix Int'l N.V.*, No. 418CV00121ALMKPJ, 2018 WL 4561621, at *3 (E.D. Tex. Sept. 24, 2018).  Plaintiffs cannot circumvent the procedural requirements of the law.  Hence, Plaintiffs cannot bring an independent action under Rule 60(d)(1).

### 4.    Failure to State a Claim Against White

Although White argues in his Motion to Dismiss that Plaintiffs' claims against him are barred by res judicata and collateral estoppel, he also maintains that the causes of action against him should be dismissed for failure to state a claim.  Plaintiffs have asserted four claims in their complaint—fraud, conspiracy to commit fraud, breach of fiduciary duty, and conspiracy to breach

fiduciary duty. In Plaintiffs' response to White's motion, however, Plaintiffs claim only that they have asserted a plausible fraud claim and two plausible conspiracy claims against White. Even if the court were to find that collateral estoppel did not bar Plaintiffs' claims against White, they should nonetheless be dismissed under Rules 12(b)(6) and 9(b).

a.   <u>Fraud</u>

In the case at bar, Plaintiffs fall short of the heightened pleading standard regarding their fraud claim against White. As stated above, the elements of fraud in Texas are:

(1)     the defendant made a material representation concerning an existing fact;

(2)     the representation was false when it was made;

(3)     the speaker knew the misrepresentation was false, or made it recklessly without knowledge of its truth and as a positive assertion;

(4)     the speaker made the misrepresentation with the intent that it should be acted upon;

(5)     the plaintiff acted with justifiable reliance on the misrepresentation; and

(6)     the plaintiff suffered injury as a result.

*Wesdem*, 70 F.4th at 291; *Lexington L. Firm*, 993 F.3d at 350 (quoting *JPMorgan Chase Bank*, 546 S.W.3d at 653). In order to succeed on a fraud claim, Plaintiffs' pleadings must satisfy the federal pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024); *Port of Corpus Christi Auth. v. Sherwin Alumina Co., L.L.C. (In re Sherwin Alumina Co., L.L.C.)*, 952 F.3d 229, 235 (5th Cir. 2020).

Rule 9(b) provides that in order to state a claim for fraud in federal court, the plaintiff must state with particularity the circumstances constituting the fraud. *See* Fed. R. Civ. P. 9(b); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007); *Pace*, 93 F.4th at 889-90; *Stringer v. Remington Arms Co., L.L.C.*, 52 F.4th 660, 661 (5th Cir. 2022); *In re Sherwin Alumina Co.,*

33

*L.L.C.*, 952 F.3d at 235; *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 429 (5th Cir. 2019).  Specifically, Rule 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b); *see Tellabs, Inc.*, 551 U.S. at 319; *Pace*, 93 F.4th at 889; *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *Mun. Emps.' Ret. Sys. of Mich.*, 935 F.3d at 429; *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018). Therefore, Rule 9(b) imposes a heightened standard of pleading for averments of fraud.  *See* FED. R. CIV. P. 8(a), 9(b); *Pace*, 93 F.4th at 889; *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *Mun. Emps.' Ret. Sys. of Mich.*, 935 F.3d at 429.  A party must plead, at the minimum, the "who, what, when, where, and how of the alleged fraud."  *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *accord Arruda*, 861 F. App'x at 834; *United States ex rel. Colquitt v. Abbott Lab'ys.*, 858 F.3d 365, 371 (5th Cir. 2017).

The Fifth Circuit applies Rule 9(b) to fraud complaints "with 'bite' and 'without apology'" but also recognizes that Rule 9(b) "supplements but does not supplant Rule 8(a)'s notice pleading." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Williams*, 112 F.3d at 178); *see IAS Servs. Grp., L.L.C.*, 900 F.3d at 647.  Therefore, Rule 9(b) "requires only simple, concise, and direct allegations of the 'circumstances constituting fraud,' which after [*Twombly*, 550 U.S. at 563] must make relief plausible, not merely conceivable, when taken as true." *Grubbs*, 565 F.3d at 186.  Generally, "to state a claim for fraud, a plaintiff must plausibly plead facts establishing 'the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *IAS*

34

*Servs. Grp., L.L.C.*, 900 F.3d at 647 (quoting *Grubbs*, 565 F.3d at 186); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (noting the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." (quoting *Williams*, 112 F.3d at 177)).

Rule 9(b), however, "relaxes the particularity requirement for conditions of the mind, such as scienter." *Tuchman*, 14 F.3d at 1068; *accord Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); *Murungi v. Tex. Guaranteed*, 693 F. Supp. 2d 597, 603 (E.D. La. 2010), *aff'd*, 402 F. App'x 849 (5th Cir. 2010). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey*, 540 F.3d at 339 (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)). "The plaintiffs must set forth *specific facts* supporting an inference of fraud." *Id.*

Moreover, the elements required by Rule 9(b) must be pleaded "*before* access to the discovery process is granted." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (quoting *Williams*, 112 F.3d at 178); *accord Grubbs*, 565 F.3d at 185; *Hart*, 199 F.3d at 248 n.6. Rule 9(b) does not permit parties to make conclusory allegations and then, through the discovery process, gain more specific information and amend their pleadings to satisfy the particularity requirement. *Tchuruk*, 291 F.3d at 349; *Williams*, 112 F.3d at 178. If a complaint fails to meet the pleading requirements of Rule 9(b), it must be dismissed. *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003); *Abrams v. Baker Hughes Inc.*, 292

F.3d 424, 430 (5th Cir. 2002); *Tchuruk*, 291 F.3d at 350.  Under Fifth Circuit precedent, a dismissal for failure to plead fraud with particularity is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010); *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 206; *Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir. 2008).

While Plaintiffs make conclusory allegations of false representations, they do not identify the specific statements made, indicate that White specifically made any alleged representations, or designate the dates on which the purported representations were made, the place at which they were made, or the benefit derived thereby.  Plaintiffs assert that "Defendants CONTINENTAL and WHITE made representations when they corresponded with BISD regarding their investigation and findings related to the boiler."  Plaintiffs fail to allege, however, the particular statements that were made by White and how exactly they were communicated to Plaintiffs.  Rather, Plaintiffs refer generally to misrepresentations, concealment, and falsified facts regarding the true condition of the boiler.  Indeed, Plaintiffs contend only that White made a misrepresentation to BISD. Further, no allegations are included as to when or where these statements were made.[11]  Without knowing exactly what White communicated to Plaintiffs, if anything, there is no way of discerning how White knew his alleged statement was false.  Although Plaintiffs allege that Puskar communicated his findings related to the heating boiler's burners and evidence of flame rollout to

---

[11] Although Plaintiffs argue in their response that a representation can be made through silence or omission, this assertion contradicts the wording in the complaint, which refers to "positive assertion[s]" made by Defendants and does not indicate that Plaintiffs allege fraud by omission, which is a subcategory of fraud, against White.  *See Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 801 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

White, no facts are asserted to show that White understood the implication of these findings. In fact, Plaintiffs alleged in the prior suit that if the ventilation system for the boiler had been functioning properly, the emission of carbon monoxide fumes into the school could have been avoided altogether.

In addition, Plaintiffs fail to specify any facts indicating that they relied on White's alleged misrepresentation, merely stating that "Plaintiffs were members of a class of people who relied on the representations and Plaintiffs' reliance was reasonable." Moreover, these are not the kind of facts that warrant a more relaxed application of Rule 9(b), as Plaintiffs urge, because they are not "peculiarly within the perpetrator's knowledge." Plaintiffs should be able to articulate exactly what White's misrepresentation was, how White intended to induce Plaintiffs to rely upon it, and how Plaintiffs did in fact rely on the misrepresentation.

In sum, Plaintiffs' allegations are too vague and imprecise to state a claim for fraud under Rule 9(b). Without alleging specific facts to support the elements, Plaintiffs cannot meet the pleading requirement. *See McCrimmon v. Wells Fargo Bank, N.A.*, 516 F. App'x 372, 375 (5th Cir. 2013) (finding that the plaintiff's pleadings did not meet the heightened standard because they "contain[ed] no specific statements made or omitted, no identified speakers, no times or places, and no explanation of why the statements were fraudulent"). In this instance, Plaintiffs' fraud claims against White do not comply with Rule 9(b) and should be dismissed. *See Owens v. BAC Home Loan Servicing, L.P.*, 2012 WL 1494231, at *6 (S.D. Tex. Apr. 27, 2012) (alleged representations made by lender about deferring, modifying, or waiving mortgage payments deemed too vague to satisfy Rule 9(b)); *George-Baunchand v. Wells Fargo Home Mortg., Inc.*, No. H-10-3828, 2011 WL 6250785, at *10 (S.D. Tex. Dec. 14, 2011) (statements made by bank

personnel regarding loan modification and foreclosure forbearance found lacking the specificity required by Rule 9(b)).

      b.    <u>Conspiracy</u>

Plaintiffs similarly fail to state a claim for relief against White regarding conspiracy. As previously mentioned, the elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship existed between the plaintiff and the defendant; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in injury to the plaintiff or benefit to the defendant. *Mesquite Servs.*, 610 S.W.3d at 564; *Anderton*, 378 S.W.3d at 51. Under Texas law, civil conspiracy is a derivative tort and liability for a civil conspiracy depends on a defendant's participation in an underlying tort. *In re Star Props.*, 6 F.4th at 609; *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 925 (W.D. Tex. 2023) (citing *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141–42 (Tex. 2019)). "If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007); *accord Agar Corp., Inc.*, 580 S.W.3d at 141. Rule 9(b)'s heightened pleading requirement also applies to civil conspiracy claims where the underlying tort is fraud. *See Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 961 (5th Cir. 1994).

Defendants argue that White and Continental could not have committed conspiracy because, under the intracorporate-conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) ("When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal

matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people."). It is unclear, however, whether this doctrine applies to Texas common law conspiracy claims. *See Tap Acquisition, Inc. v. Vianet Group PLC*, No. 3:14-CV-3601-B, 2016 WL 8674576, at *4 (N.D. Tex. Oct. 14, 2016) (citing *Block v. Alpharma, Inc.*, No. CIV.A. 3:02-CV-1077-, 2004 WL 555480, at *2-3 (N.D. Tex. Mar. 17, 2004) ("While there is some disagreement among Texas courts of appeals as to whether the intracorporate conspiracy doctrine extends to Texas common law conspiracy claims, another court in this district, noting the conflict and predicting how the Texas Supreme Court would rule, held that under Texas law a parent corporation cannot conspire with its fully owned subsidiary."). Plaintiffs counter that the intracorporate-conspiracy doctrine would not apply to their allegation that White is also a co-conspirator of Troutt, the Chief Boiler Inspector of Texas, who was not named as a party in this case or in *Robison*.

Even if the intracorporate-conspiracy doctrine does not apply in this case, Plaintiffs have nonetheless failed to state a claim for conspiracy to commit fraud or conspiracy to breach fiduciary duty. Because Plaintiffs did not allege sufficient facts to meet the heightened pleading requirement for fraud, they cannot maintain an action for conspiracy to commit fraud. *See Thomas v. Abebe*, 833 F. App'x. 551, 554 (5th Cir. 2020) ("Because [plaintiff's] claim of conspiracy to commit fraud is predicated on his fraud claim, it likewise fails."). Similarly, because Plaintiffs admit in their response that they do not allege a breach of fiduciary duty claim against White, they cannot properly assert a claim of conspiracy to breach fiduciary duty against him.[12] *Agar Corp., Inc.*,

---

[12] Specifically, in footnote 3 of their response, Plaintiffs assert that they "do no[t] allege a breach of fiduciary duty claim against Defendant White but maintain their claims against Defendant White for fraud, conspiracy to commit fraud, and conspiracy to breach fiduciary duty."

580 S.W.3d at 141 (holding that "a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it"); *Klinek v. LuxeYard, Inc.*, 596 S.W.3d 437, 447 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ("Civil conspiracy is not a stand-alone tort."). Therefore, Plaintiffs have failed to state a claim against White for fraud, conspiracy to commit fraud, breach of fiduciary duty, and conspiracy to breach fiduciary duty.

### c. Opportunity to Amend

As a general matter, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without first giving the plaintiff an opportunity to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to refiling); *see also Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020); *accord* Fed. R. Civ. P. 16(b). Where, however, "the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so," a court may dismiss a plaintiff's claims without such an opportunity. *Hart*, 199 F.3d at 248 n.6. "The district court properly exercises its discretion . . . when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021) (quoting *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014)). In the case at bar, leave to amend would be futile in view of the court's conclusion that collateral estoppel bars Plaintiffs' claims against Defendants. Thus, leave to amend is not warranted in this instance.

III.    Conclusion

The case at bar must be dismissed for several reasons.  All of Plaintiffs' claims against Continental are barred because they would require the relitigation of the issue of causation, which is precluded under the doctrine of collateral estoppel.  These claims are likewise barred against White by virtue of his privity with Continental.  Furthermore, Plaintiffs have failed to state a claim against White for fraud and breach of fiduciary duty, thus necessitating the dismissal of those claims, as well as Plaintiffs' civil conspiracy claims against White.

Accordingly, Defendant Continental's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (#51), Defendant White's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (#52), and Defendants' Motion to Strike Evidence Filed with Plaintiffs' Response to Defendants' Rule 12(b)(6) Motion (#62) are granted.  Plaintiffs' complaint is dismissed with prejudice.  A final judgment will be entered separately.

SIGNED at Beaumont, Texas, this 23rd day of September, 2025.

_Marcia A. Crone_

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE